**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **ALEXANDER J. COFFIN,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No.: 1:20-cv-03120-SAG |
| | * | |
| **TGM ASSOCIATES LP,** *et al.*, | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff, Alexander J. Coffin, who appears pro se, filed this case against Defendants TGM Associates LP, TGM Odenton LLC, and TGM Communities LLC (collectively, "TGM Defendants"), as well as Steven C. Macy, Michael G. Frazzetta, and John Gochberg (collectively, the "Specially Appearing Defendants" or "SADs")[1], alleging that Defendants violated state and federal law via conduct related to Plaintiff's lease at one of the TGM Defendants' Maryland properties. ECF 1. Currently pending is Defendants' Motion to Dismiss, ECF 8. I have considered the motion and the parties' related filings. ECF 11, 12. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons set forth below, Defendants' Motion to Dismiss will be granted.

**I.    FACTUAL BACKGROUND**

For the period of August 20, 2019 to August 31, 2020, Plaintiff contracted with TGM Odenton to lease a one-bedroom apartment. ECF 1 at 6. The Lease included a requirement that

---

[1] The SADs are appearing specially here to challenge the Court's personal jurisdiction to adjudicate the claims against them.

Plaintiff provide a $250.00 security deposit, which Plaintiff paid to TGM Communities. *Id.* at 7. Following Plaintiff's vacating the leased premises at the end of the term, TGM Communities conducted an inspection of his former apartment. *Id.* at 9-10. After the inspection, TGM Communities informed Plaintiff that it had to replace the carpet due to multiple stains and demanded that Plaintiff pay the replacement cost. *Id.* TGM Communities stated that it would apply Plaintiff's $250.00 security deposit, along with $5.00 in accrued interest, toward the cost of replacement, but demanded that Plaintiff pay an additional $570.51. *Id.* TGM Communities stated that it would send Plaintiff's account to a collection agency if payment of this balance was not received by October 11, 2020. *Id.*

Plaintiff responded to TGM Communities's letter with a letter of his own, demanding that "TGM Odenton Management" return $149.53 of his security deposit.[2] *Id.* Plaintiff suggested in the letter that the alleged damage to the carpet resulted from a flooding caused by water seepage from an upper-level apartment into his bedroom the prior year. *Id.* Plaintiff further stated that he was "preparing to obtain financing to purchase a home" and threatened to "bring an action against [TGM Communities] seeking punitive damages should [they] attempt to impair [his] credit or by referring this matter to a collection agency or credit rating agency." *Id.* Defendants did not return the $149.53 Plaintiff demanded, nor did Plaintiff pay Defendants the additional $570.51 they demanded. This suit ensued.

## II. LEGAL STANDARD

Defendants have filed a motion to dismiss the various counts of Plaintiff's Complaint under differing theories, citing Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6).

---

[2] Plaintiff acknowledges that the TGM Defendants are entitled to retain the other $105.47 of his security deposit to cover his final utilities payment. ECF 11-1 at 2.

ECF 8-1.  A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss.  *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016).

Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction.  *See Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3); s*ee also Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 196 (4th Cir. 2008).  Thus, the Court may properly grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction."  *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).  Under Rule 12(b)(1), the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction.  *See Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *see also Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999).

A motion to dismiss for lack of personal jurisdiction invokes Rule 12(b)(2).  "When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence."  *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).  Discovery and an evidentiary hearing are not required to resolve a motion under Rule 12(b)(2).  *See generally* 5B Wright & Miller, Federal Practice & Procedure § 1351.  The Court may address personal jurisdiction as a preliminary matter, ruling solely on the motion papers, supporting legal memoranda, affidavits, and the allegations in the complaint.  *Consulting Engr's Corp. v. Geometric Ltd.*, 561 F.3d 273, 276 (4th Cir. 2009); *see also In re*

3

*Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997).  In such a circumstance, the plaintiff need only make "a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge."  *Consulting Eng'rs Corp.*, 561 F.3d at 276.  "In deciding whether the plaintiff has made the requisite showing, the court must take all disputed facts and reasonable inferences in favor of the plaintiff."  *Carefirst*, 334 F.3d at 396 (citing *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 62 (4th Cir. 1993)).

A Rule 12(b)(6) motion, meanwhile, constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."  Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face."  *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.'"); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017).  But, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."  *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation.  *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a

complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d 435 at 440 (citations omitted); *see Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). However, a court is not required to accept legal conclusions drawn from the facts. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

### III.  ANALYSIS

#### A.  Personal Jurisdiction

As an initial matter, Defendants assert that the Court lacks personal jurisdiction over the Specially Appearing Defendants. "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport

with the due process requirements of the Fourteenth Amendment." *Carefirst*, 334 F.3d at 396.  As the Maryland Court of Appeals noted in, *Bond v. Messerman*, 391 Md. 706 (Md. 2006), "We have construed our long-arm statute to authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause." *Id.* at 722.  "[T]he burden [is] on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst*, 334 F.3d at 396.

The due process analysis begins with a determination of whether the defendant has minimum contacts with the forum such that requiring it to appear in the state "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Federal courts recognize two types of personal jurisdiction: general and specific.  *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. —, 137 S. Ct. 1773, 1779 (2017) (citation omitted).  Specific jurisdiction is "based on conduct connected to the suit," whereas general jurisdiction is based on "continuous and systematic" activities in the forum state.  *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012) (quoting *ALS Scan, Inc. v. Dig. Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002)).  Regardless of whether the purported personal jurisdiction is general or specific, "[f]airness is the touchstone of the jurisdictional inquiry, and the minimum contacts test is premised on the concept that a [defendant] that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there." *Id.*

Here, there is no allegation that the Court has general personal jurisdiction over the SADs, nor can there be, because none of them are domiciled or own property in Maryland. *See* ECF 8-5, 8-6, 8-7.  Specific jurisdiction is similarly lacking.  For a "court to exercise specific jurisdiction, 'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*,'" *Bristol-Myers*, 137 S. Ct. at 1780 (quoting *Daimler A.G.*, 571 U.S. at 127).  No such relationship is plausibly

alleged here.  The individual SADs are not alleged to have played any role in inducing Plaintiff to sign the lease, or, indeed, to have had any contact with him whatsoever.  Similarly, the SADs are not alleged to have had any direct involvement in TGM's actions taken regarding Plaintiff's security deposit, carpet replacement, or threatened referral to a debt collector.

Plaintiff suggests that the SADs' position as TGM executives with significant control over the company makes them liable for the TGM Defendants' activities.  ECF 11 at 2-5, 14-16.  However, "personal jurisdiction over an individual officer, director, or employee of a corporation does not automatically follow from personal jurisdiction over the corporation."  *Harte–Hanks Direct Mktg./Balt., Inc. v. Varilease Tech. Fin. Group, Inc.*, 299 F.Supp.2d 505, 513 (D. Md. 2004) (citations omitted).  Instead, the complaint must allege that the SADs "had a direct personal involvement in a tort committed in the forum state."  *Columbia Briargate Co. v. First Nat. Bank in Dallas*, 713 F.2d 1052, 1064 (4th Cir. 1983) (internal quotations omitted).  There are no allegations of the individual SADs' "direct personal involvement" in the actions TGM took regarding Plaintiff's lease and security deposit, beyond his conclusory assertions that they "control and direct all decisions and actions of the [TGM Defendants]."  ECF 1 at 5-6.  It is implausible to suggest that three individual executives at the head of a multi-billion-dollar management company with more than one hundred buildings nationwide would "control and direct" TGM's actions regarding a single renter's lease and his $250.00 security deposit.

To the extent that Plaintiff suggests that the SADs' "control and direction" pertained to their control over a broader scheme to steal renters' security deposits in Maryland that constitutes purposeful availment, he has failed to supply specific, plausible factual allegations to that end.  To be sure, the Complaint alleges that the Defendants, including the SADs, "knew that the promises contained in the Lease with respect to the security deposit were false . . . because Defendants were

then engaged in a widespread national scheme to defraud other tenants by accepting security deposits with no intent to return the deposits at the termination of the tenancies regardless of the post-lease condition of rental properties," ECF 1 at 7. But, fatally, there are *no* allegations outlining any details of that "widespread national scheme." A single negative Yelp review and vague, unspecific references to other former tenants "victimized by Defendants," ECF 1 at 11-12, do not suffice to make plausible a far-reaching nationwide conspiracy to deprive renters of their security deposits. In fact, it would defy belief if an apartment management company with 132 multifamily communities throughout 28 states did not have an occasional dispute with its tenants over the return of a particular deposit. The Complaint's allegations of an agreement and scheme based "on information and belief," *id.* at 16-21, are also insufficient and conclusory, because they similarly leave every facet of the purported agreement and conspiracy to the imagination. *See, e.g.*, *Gilmore v. Jones*, 370 F. Supp. 3d 630, 660 (W.D. Va. 2019) (setting aside conclusory assertions in determining whether specific personal jurisdiction exists); *see also In re Lilley*, No. 10-81078C-13D, 2011 WL 1428089, at *3 (Bankr. M.D.N.C. Apr. 13, 2011) (describing how "upon information and belief" is often used inappropriately to couch conclusory allegations). Stating in conclusory fashion that the SADs agreed to defraud renters out of their security deposits, without any specifics regarding the scheme's timeline, scope, mechanics, or any other particularized factual details beyond the purported fact of its existence, is insufficient for specific personal jurisdiction to attach. *See In re Boon Glob., Ltd.*, 923 F.3d 643, 654 (9th Cir. 2019) ("Conclusory allegations that Dobson structures companies to escape liability are insufficient to confer personal jurisdiction. Something more is needed.") (citations omitted); Fed. R. Civ. P. 9(b) (allegations of fraud must be pled with particularity).

The case upon which Plaintiff most heavily relies in arguing the existence of specific personal jurisdiction over the SADS, *Becker v. Noe*, No. CV ELH-18-00931, 2019 WL 1415483, at *27 (D. Md. Mar. 27, 2019), only serves to further illuminate the jurisdictional shortcomings of his Complaint.  Pointing to Judge Hollander's detailed explanation of specific personal jurisdiction and, in particular, her list of factors suggestive of the existence of purposeful availment, he suggests that the SADs satisfy almost every factor she identified.  ECF 11 at 15-16.  This assertion confuses the purposeful availment by the TGM Defendants with that of the SADs.  While it is true that TGM appears to maintain offices in Maryland, own property in Maryland, do long-term business in Maryland, and more—clearly satisfying Judge Hollander's list—the Complaint is devoid of specific, non-conclusory allegations that the SADs *individually* did any of those things.  In fact, Defendants have supplied declarations from the SADs stating precisely the opposite.  *See* ECF 8-5, 8-6, 8-7.  As *Becker* itself explains, "[w]hen the defendant is a nonresident corporate agent, the court must examine the defendant's contacts with the forum state in his individual capacity . . . The defendant's contacts as a corporate agent on corporate business are not sufficient to establish personal jurisdiction."  2019 WL 1415483, at *27.  Plaintiff argues at length that the SADs are inextricably tied to the TGM Defendants' operations, ECF 11 at 2-5.  Even if that is true, it does not change the jurisdictional conclusion given the lack of specific, individual ties between each SAD and Maryland beyond their general role as corporate agents for the TGM Defendants.

For the foregoing reasons, Plaintiff has failed to carry his burden of showing, by a preponderance of the evidence, that the Court has specific personal jurisdiction over the SADs.  Counts II through IV are dismissed as to the SADs for this reason.  Counts V through VII,

meanwhile, will be dismissed in their entirety because they are brought only against the SADs.[3] Because the dismissals are premised on jurisdictional defects, the claims will be dismissed without prejudice. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (favorably citing case law that dismissals for lack of jurisdiction should be without prejudice").

### B. Subject Matter Jurisdiction

The remaining counts against the TGM Defendants, Counts I through IV, sound in state law exclusively, and this Court declines to exercise pendent or supplemental jurisdiction over the state law claims.[4] *See Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (explaining that a court has wide discretion to decline to exercise supplemental jurisdiction when it has dismissed all claims over which it has original jurisdiction). Thus, to remain in federal court, Plaintiff must rely on diversity jurisdiction, which requires that complete diversity of citizenship exist between the parties and that the amount in controversy exceed $75,000.00, exclusive of costs and interest. 28 U.S.C. § 1332. There is no dispute that the parties here are completely diverse. A review of the damages Plaintiff seeks is required, however, to determine whether he satisfies the amount in controversy requirement.

---

[3] While the Court does not here reach the merits of Plaintiff's RICO claims because it lacks personal jurisdiction over the SADs, the claims appear to consist solely of cursory assertions of the existence of a racketeering scheme, under a statute subject to a heightened pleading standard. *See Cozzarelli v. Inspire Pharmaceuticals Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) (civil RICO claim implicates heightened pleading standard under Rule 9(b)).

[4] Although Count II includes a claim alleging unfair and deceptive business practices under the Federal Trade Commission Act ("FTCA"), Plaintiff agrees that there is no such private right of action under the FTCA and consents to dismissal of that portion of his Count II claim. ECF 11 at 17.

Generally, the damages sum claimed by the plaintiff controls when determining whether the amount in controversy requirement is met, unless it is apparent to a legal certainty that the plaintiff cannot recover the amount claimed. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938). Plaintiff alleges $149.53 in actual damages,[5] ECF 1 at 20, which leaves him $74,850.47 short of the requirement. To establish that the $75,000.00 jurisdictional minimum is satisfied, Plaintiff relies upon his assertion of $5,000,000.00 in punitive damages. *See* ECF 11 at 13; *see also Gordon v. Nat'l Bus. Consultants, Inc.*, 856 F.2d 186 (4th Cir. 1988) ("Exemplary or punitive damages may be included in determining whether a plaintiff has satisfied the amount in controversy requirement."). For the reasons that follow, the Court concludes that it is clear to a legal certainty that Plaintiff cannot recover punitive damages in an amount sufficient to satisfy the amount in controversy requirement.

First, while there can be no doubt that Plaintiff may use punitive damages to meet the amount in controversy requirement, where "it appears that such a [punitive damages] claim comprises the bulk of the amount in controversy and may have been colorably asserted solely or primarily for the purpose of conferring jurisdiction, that claim should be given particularly close scrutiny." *Packard v. Provident Nat. Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993) (citing *Zahn v. International Paper Co.*, 469 F.2d 1033, 1033–34 n. 1 (2d Cir.1972)); *see also Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir. 1983) ("[C]laims for punitive damages proffered for the purpose of

---

[5] The Complaint also claims unspecified "damages in an amount to be proved at trial for injury to Plaintiff's professional and credit reputation." ECF 1 at 20. However, Plaintiff does not allege that Defendants ever actually referred his outstanding money owed to a collection agency or that anyone else even knows about this security deposit dispute, let alone individuals in his professional community. Therefore, for the purposes of determining the amount in controversy, the Court will not include any reputation damages in its calculation, because the Complaint 1) does not specify an amount and 2) lacks allegations that would allow the Court to determine what the amount might reasonably be, or indeed even that such damages exist at all.

achieving the jurisdictional amount should be carefully examined."); *Alexander v. Hendrix*, No. CIV.A. RDB-14-2666, 2015 WL 3464145, at *3 (D. Md. May 29, 2015) (noting that "the use of punitive damages to satisfy the jurisdictional amount-in-controversy requirement is subject to special scrutiny"). As Plaintiff himself admits, "a large portion of Plaintiff's damages are exemplary in nature." ECF 11 at 13. Thus, careful review of his claimed $5,000,000.00 in punitive damages—and whether, short of that, he can even attain sufficient punitive damages to clear the $75,000.00 amount in controversy threshold—is warranted.

The availability of punitive damages under Maryland law for Plaintiff's Counts I, II, III, and IV varies. For Count I's "breach of lease" claim, Plaintiff may proceed under Maryland common law or under the Maryland Security Deposit Act. Under common law, the most that he may recover is $149.53—the portion of the security deposit that he alleges was improperly withheld. ECF 11-1 at 2. "Certainly, [Plaintiff] cannot expect to receive in profits, by way of damages, any more than he would have gained had the terms of the contract been fulfilled." *Cottman v. State, Dep't of Nat. Res.*, 443 A.2d 638, 640 (Md. Ct. App. 1982). Pursuing his breach of lease claim under the Maryland statute, meanwhile, would allow him to seek compensatory damages (which would, again, be the $149.53 wrongfully withheld) and discretionary punitive damages up to three times this amount—in this case, no more than $448.59 total. *See* Md. Code Ann., Real Property, § 8-203(e)(4).

For Count II, Plaintiff is limited by the Maryland Consumer Protection Act ("MPCA") to his damages "such as will compensate the injured party for the injury sustained due to the defendant's acts and for indirect consequences of such acts." *Citaramanis v. Hallowell*, 613 A.2d 964, 969 (1992). He may not seek punitive damages because the statute's private remedy "contains no punitive component." *Id.* at 967 (quoting *Golt v. Phillips*, 517 A.2d 328, 333 (1986)).

For Counts III and IV, the fraud claims, Plaintiff may pursue punitive damages. "In the case of fraud, punitive damages may be awarded where a defendant acts with actual malice." *Legacy Inv. and Management, LLC*, No. WDQ-12-2877, 2014 WL 5325757 at *10 (D. Md. Oct. 17, 2004) (internal quotations omitted). Actual malice is defined as "a misrepresentation [made] with intent to deceive and actual knowledge of the falsity of the representation," *Frazier v. Castle Ford, Ltd.*, 430 Md. 144, 162 (2013), which is what Plaintiff has alleged here. While there is no rigid statutory or common law cap on the amount of punitive damages Plaintiff may seek, that does not mean that his claims are entirely free from restraint. Under Maryland law, in a tort case where punitive damages are allowed, the amount of such damages is reviewable by the Court for excessiveness—in fact, that review is a requirement of procedural due process. *Bowden v. Caldor, Inc.*, 710 A.2d 267, 277 (1998).

Maryland courts "generally review punitive damages in light of nine, non-exclusive, legal principles articulated . . . in *Bowden*." *Khalifa v. Shannon*, 945 A.2d 1244, 1264-65 (2008). Contrary to Plaintiff's suggestion that there need be no relationship between the amount of compensatory damages and the amount of punitive damages awarded, ECF 11 at 13, one of the *Bowden* factors is "[w]hether a punitive damages award bears a reasonable relationship to the compensatory damages awarded in the case . . . ." 710 A.2d at 284. At least one Maryland court considered this "[p]erhaps the most significant factor." *Darcars Motors of Silver Spring, Inc. v. Borzym*, 818 A.2d 1159, 1197 (2003), *aff'd*, 379 Md. 249, 841 A.2d 828 (2004) While *Bowden* very clearly carves out certain situations "in which little or no consideration should be given to [that] relationship," the examples it gives are far afield from this case, such as when the conduct is "extremely heinous . . . having great potential for harm, but because of fortuitous circumstances the plaintiff does not suffer a great deal of compensatory harm . . . ." *See id.* While an alleged

scheme to deprive tenants of their security deposits would certainly be wrongful, there is nothing "extremely heinous" about such garden variety fraud.[6] Thus, under Maryland law, it is appropriate for this Court to consider the amount of punitive damages sought in relation to the compensatory damage Plaintiff is seeking, in determining whether he will be able obtain sufficient punitive damages to meet the amount in controversy requirement.

Additionally, as the Maryland Court of Appeals recognized in *Bowden*, the Supreme Court has outlined constitutional limits on punitive damages awards, originating out of the Due Process clause of the Fourteenth Amendment. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003). Such awards are not to be "grossly excessive or arbitrary punishments." *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 433 (2001). While there is no mathematical formula to calculate the constitutional limit on punitive damages in any given case, the Supreme Court has noted that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 485.

Here, in order to satisfy the $75,000.00 amount in controversy, Plaintiff would have to recover punitive damages roughly five hundred (500) times as great as his alleged $149.53 compensatory damages. That is to say nothing of the fact that the actual amount of punitive damages his Complaint purports to seek, $5,000,000.00, is 33,447 times greater than his claimed $149.53 compensatory damages. Those ratios almost inconceivably exceed the single-digit ratio

---

[6] To put a finer point on it, for a claim to implicate punitive damages it by its very nature already involves "heinous" or "outrageous" conduct worthy of being punished or deterred. *See Schaefer v. Miller*, 587 A.2d 491, 503 (1991) (Eldridge, J. concurring). *Bowden*'s language further distinguishing "extremely heinous" conduct, then, requires something more beyond simple misconduct.

the Supreme Court espoused in *State Farm*.[7] They also run contrary to Maryland jurisprudence, which empowers the Court to evaluate whether the punitive damage award has a reasonable relationship with the compensatory damage award. *See, e.g.*, *ProExpress Distributors LLC v. Grand Elecs., Inc.*, 2017 WL 2264750, at *7 (Md. Ct. Spec. App. May 24, 2017) (finding a punitive damages award roughly 33 times the value of the compensatory damages award to be excessive); *Darcars Motors*, 818 A.2d at 1198 (upholding the reduction of punitive damages as excessive where the punitive damages were 23 times as great as the compensatory damages); *Bowden*, 710 A.2d at 284 ("[W]e believe that the three to one ratio frequently appearing in statutory provisions is some indication of public policy concerning the relationship of monetary punishments to actual damages. . . ."). As such, it is clear to a legal certainty that the amount of punitive damages necessary for Plaintiff to meet the amount in controversy requirement would violate both Maryland law and the Constitution if awarded. Thus, since Plaintiff cannot recover the jurisdictional minimum of $75,000, diversity jurisdiction does not exist.[8] Because this Court declines to exercise supplemental jurisdiction, Counts I through IV will be dismissed without prejudice, to permit

---

[7] The Court notes that if plaintiffs were allowed to satisfy amount in controversy requirement simply by pleading punitive damages five hundred (500) times greater than their alleged compensatory damages, "federal courts would be required to hear almost any state law claim where diversity of citizenship happens to exist between the parties." *Manuel v. Gembala*, No. 7:10-CV-4-FL, 2010 WL 3860407, at *10 (E.D.N.C. Sept. 30, 2010). That cannot be the state of the law, because diversity jurisdiction was not intended to "flood the federal courts with minor disputes." *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005).

[8] While this Court need not and does not reach the issue, like with the RICO claim discussed above, it is unclear whether Plaintiff's claims in Counts II through IV satisfy Rule 12(b)(6) and Rule 9(b) as currently pled. While Plaintiff lays out a plausible breach of lease claim centered on his view of the Lease's security deposit provisions, the state of his vacated apartment's carpet, and the appropriate cost to clean the carpet, his attempt to extrapolate that individual disagreement into a far-reaching fraud scheme to steal security deposits appears to contain few, if any, particularized factual allegations to support such extrapolation beyond the facts suggesting a routine landlord-tenant dispute.

Plaintiff to refile them in state court. *See Broadlands*, 713 F.3d at 185 ("A dismissal for lack of standing—or any other defect in subject matter jurisdiction—must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 8, is GRANTED, and Plaintiff's claims are dismissed without prejudice. This case will be closed. A separate Order follows.


Dated: April 2, 2021                                        /s/
                                                Stephanie A. Gallagher
                                                United States District Judge